Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VIII

| | | |
|---|---|---|
| COOPERATIVA DE AHORRO Y CRÉDITO DE CAGUAS<br><br>Demandante-Recurrido<br><br>v.<br><br>JAVIER JUAN ROSARIO RIVERA, NICOLE MARRERO OTERO Y LA SOCIEDAD LEGAL DE GANANCIALES<br><br>Demandados<br><br>ERIC MARTÍN PAGÁN DÍAZ, VIRGEN MILAGROS RAMOS ORTIZ Y LA SOCIEDAD LEGAL DE GANANCIALES<br><br>Co-Demandados-Peticionarios | KLAN202300947 | *APELACIÓN se acoge como CERTIORARI* procedente del Tribunal de Primera Instancia, Sala de Bayamón<br><br>Caso Núm.<br><br>D CD2015-0857 (402)<br><br>SOBRE:<br><br>EJECUCIÓN DE HIPOTECA IN REM |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Monge Gómez y el Juez Cruz Hiraldo.

Juez Ponente, Cruz Hiraldo

**SENTENCIA**

En San Juan, Puerto Rico, a 6 de febrero de 2024.

Comparece la parte peticionaria, Eric Martín Pagán Díaz, Virgen Milagros Ramos Ortiz y la Sociedad Legal de Gananciales compuesta por ambos, para solicitarnos que se revise y revoque la "*Sentencia*" dictada el 21 de septiembre de 2023 y notificada el 26 de septiembre de 2023 por el Tribunal de Primera Instancia, Sala Superior de Bayamón, en la cual declaró Ha Lugar a la *Demanda Enmendada* presentada y a la ejecución de hipoteca *in rem* mediante sentencia sumaria.

Acogemos el recurso de epígrafe como una petición de *Certiorari* por ser el recurso adecuado, como mostraremos adelante.[1] Sin embargo, este mantendrá la misma identificación alfanumérica correspondiente a una apelación.

Por los fundamentos que exponemos a continuación, se expide el auto de *certiorari* y se revoca la "*Sentencia*" recurrida. En su consecuencia, se deniega la moción de sentencia sumaria. Se devuelve al Tribunal de Primera Instancia para la continuación de los procedimientos

I

El 7 de abril de 2015, la Cooperativa de Ahorro y Crédito de Caguas (en adelante, Caguas Coop) instó una *Demanda* por cobro de dinero y ejecución de hipoteca en contra de Javier Rosario Rivera, Nicole Marrero Otero y la Sociedad Legal de Gananciales compuesta por ambos (conjuntamente "Rosario-Marrero"). En apretada síntesis, el 28 de junio de 2013, Caguas Coop les concedió a los demandados un préstamo hipotecario con el propósito de refinanciar un préstamo hipotecario previo y, posteriormente, los demandados incumplieron con su obligación, adeudando una cantidad de $315,533.67, más intereses, costas, y honorarios de abogado.

Luego del emplazamiento y un breve trámite procesal, el 31 de agosto de 2015, los demandados presentaron una *Solicitud de Desestimación*. Los demandados informaron que no eran los actuales titulares del inmueble objeto de la acción civil y arguyeron, entre otras cosas, que la *Demanda* debió desestimarse por falta de partes indispensables. De la anejada escritura de compraventa surgió que, el 3 de agosto de 2010, los demandados habían vendido

---

[1] El término "sentencia" incluye cualquier determinación del Tribunal de Primera Instancia que resuelva finalmente la cuestión litigiosa y de la cual pueda apelarse. Solo debe quedar pendiente su ejecución. Regla 42.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 42.1. Por otro lado, el término "resolución" incluye cualquier dictamen que pone fin a un incidente dentro del proceso judicial. *Id.*

el inmueble a los compradores, Eric Martín Pagán Díaz y Virgen Milagros Ramos Ortiz.

El 9 de marzo de 2016, Caguas Coop se opuso a la solicitud de desestimación y expresaron que los demandados pretendían desligarse de su obligación contractual de forma temeraria, que éstos actuaron de mala fe al ocultar el hecho de la compraventa en el otorgamiento del préstamo de hipoteca, cuyo hecho vició el consentimiento de la demandante, y que Caguas Coop cumplió con su deber de diligencia al haber realizado un estudio de título de la cual reveló que la compraventa no constaba inscrita en el Registro de la Propiedad. Por último, señalaron que los actos de los demandados eran de índole criminal y que podían responder bajo los Artículos 202 y 212 del Código Penal[2].

El 19 de agosto de 2016, notificada el 31 de agosto de 2016, el Tribunal de Primera Instancia emitió una *Orden* declarando No Ha Lugar a la desestimación del pleito. El foro primario razonó que la venta de la propiedad por la parte demandada no lo liberaba de responsabilidad debido a que éstos se obligaron con la parte demandante. Así las cosas, el Foro de Instancia ordenó la enmienda y emplazamiento de los nuevos codemandados, Eric Pagán Díaz, Virgen Ramos Ortiz y la Sociedad Legal de Bienes Gananciales compuesta por ambos (conjuntamente "Pagán-Ramos").[3]

Ante solicitud de parte, el 26 de septiembre de 2016, notificada el 28 de septiembre de 2016, el Tribunal de Primera Instancia dictó *Sentencia de Paralización por Quiebra* debido a que los demandados Rosario-Marrero se sometieron a los

---

[2] Arts. 202 y 212 del Código Penal de Puerto Rico de 2012, según enmendada, 33 LPRA § 5272 y 5282.

[3] Notamos que en la *Orden* del 19 de agosto el Tribunal de Primera Instancia indicó que la controversia presentada fue resuelta por el Tribunal Supremo en cuanto a que los nuevos titulares, bajo estas circunstancias, tendrían una acción en daños en contra de "los que vendieron sin decirle que la casa garantizaba una deuda hipotecaria". A nuestro entender, el foro *a quo* no se percató que la compraventa ocurrió previo a la otorgación de hipoteca.

procedimientos de quiebra bajo el Capítulo 13 del Código de Quiebra de los Estados Unidos[4]. El 7 de abril de 2017, el Tribunal de Quiebras emitió un dictamen indicando que los demandados no podían ser liberados de la deuda hipotecaria por la siguiente razón:

> [...] The false and fraudulent misrepresentations made by the Defendants to COOP about their ownership interest in the real property was intended to, and did, deceive and cause injury to Plaintiff. COOP would not have refinanced the earlier 2006 loan if it had known that Defendants no longer owned the real property which secured the original loan. Therefore, pursuant to 11 U.S.C. §523(a)(2)(A), the court determines that claim number 2-1 in the amount of $346,915.51 is nondischargeable as a matter of law.[5]

En cumplimiento de la *Orden* emitida por el Tribunal de Primera Instancia previo a la paralización del pleito, el 14 de octubre de 2016, Caguas Coop presentó una *Demanda Enmendada* para incluir como codemandados al matrimonio Pagán-Ramos. El 4 de junio de 2018, notificada el 8 de junio de 2018, el foro primario ordenó la reapertura del caso, autorizó la *Demanda Enmendada* y expidió el debido emplazamiento mediante una segunda *Orden* emitida el 21 de septiembre de 2018 y notificada el 9 de octubre de 2018.

Emplazados los codemandados Pagán-Ramos, el 14 de diciembre de 2018, éstos presentaron un *Escrito en Cumplimiento* en la cual solicitaron la desestimación de la *Demanda Enmendada* o, en la alternativa, que se declarara con lugar la reconvención presentada en el mismo escrito, se dispusiera sobre el cumplimiento específico de Caguas Coop de modificar la hipoteca y se concediera una indemnización por los daños reclamados. En cambio, el 9 de abril de 2019, Caguas Coop presentó una *Moción en Cumplimiento de Orden y en Oposición a Solicitud de Desestimación* donde solicitó que se declarara No Ha Lugar a la solicitud de desestimación y la

---

[4] 11 U.S.C.A. § 1301 et seq.
[5] *COOP A/C Caguas v. Rosario Rivera et al. (In re Rosario Rivera)*, Case No. 16-06618 BKT, p. 4.

reconvención. Así las cosas, el 24 de abril de 2019 y notificada el 1 de mayo de 2019, el Tribunal de Primera Instancia emitió una *Resolución* y declaró No Ha Lugar a la solicitud de desestimación, sin hacer una determinación sobre la reconvención.

Acaecidos diversos trámites procesales, el Tribunal de Primera Instancia refirió a las partes múltiples veces al acto de mediación, de conformidad con la Ley Núm. 184-2012[6]. El proceso de mediación culminó el 24 de febrero de 2022, con la última reunión entre las partes en el Centro de Mediación de Conflictos. En esta, el Centro de Mediación de Conflictos indicó que el proceso concluyó sin acuerdo y que "el inmueble no constituía la vivienda principal del deudor hipotecario o de su familia inmediata".

El 12 de abril de 2022, los codemandados Rosario-Marrero presentaron una *Moción sobre Demanda Contra Co-Partes*. En apretada síntesis, éstos le solicitaron al foro primario permiso para presentar demanda en contra del matrimonio Pagán-Ramos por incumplimiento de contrato debido a que, en la compraventa del bien inmueble objeto del pleito, el matrimonio Pagán-Ramos se había obligado a pagar la hipoteca más el mantenimiento de la urbanización y a gestionar el traspaso de la hipoteca sobre el inmueble a favor de Master Mortgage[7] a su nombre, entre otras cosas. Ante ello, reclamaron la resolución de la compraventa incumplida, la devolución de la posesión del inmueble y de la cuantía de $25,000.00, el pago debido a Caguas Coop por la hipoteca y cuantías en concepto de daños y perjuicios.

---

[6] Ley para Mediación Compulsoria y Preservación de tu Hogar en los Procesos de Ejecuciones de Hipotecas de una Vivienda Principal, Ley Núm. 184-2012, según enmendada, 32 LPRA § 2881 et seq.

[7] Según las alegaciones de varios de los escritos, la hipoteca inscrita sobre la propiedad a favor de Master Mortgage fue luego cedida al demandante, Cooperativa de Ahorro y Crédito de Caguas. No obstante, no se presentó evidencia de la cesión, por lo que no estamos en posición para determinar o adjudicar sobre ello.

El Foro de Instancia concedió varias prórrogas para que las partes se expresaran en cuanto a la moción previa y no presentaron oposición alguna. No obstante, el Tribunal de Primera Instancia ordenó a Caguas Coop a que aclarara si el caso era *in rem* mediante *Orden* emitida el 18 de agosto de 2022, notificada al día siguiente. Así las cosas, el 26 de agosto de 2022, los demandados Pagán-Ramos comparecieron mediante *Escrito Informativo* y esgrimieron que la acción civil de autos no era *in rem*. Luego, el 8 de septiembre de 2022, Caguas Coop presentó una *Moción en Cumplimiento de Orden* en la cual aclaró que la demanda se presentó por la vía ordinaria, pero que, al advenir en conocimiento de la compraventa, sostuvo que se considerara la presente causa de acción como una ejecución de hipoteca *in rem*. Asimismo, el 13 de septiembre de 2022, notificada al día siguiente, el Tribunal de Primera Instancia declaró No Ha Lugar a la *Moción sobre Demanda Contra Co-Partes* por "[ser] este un caso de naturaleza '*in rem*'".

Pasado un número de trámites procesales impertinentes a la controversia ante nos, el 9 de diciembre de 2022, Caguas Coop presentó una *Moción en Solicitud de Sentencia Sumaria* en donde solicitó que se declarara con lugar la demanda sumariamente y se procediera con los procedimientos de ejecución de hipoteca *in rem*. Así las cosas, los codemandados Rosario-Marrero presentaron una moción de desestimación por desistimiento con perjuicio. En dicho escrito se arguyó que, mediante la moción de sentencia sumaria y documentos previos, los demandantes desistieron de la acción personal en contra de los codemandados Rosario-Marrero al sostener que se trata de una reclamación "*in rem*". También esgrimieron que la moción de sentencia sumaria no cumplía con los requisitos esbozados en la Regla 36 de Procedimiento Civil[8]. Por otro

---

[8] 32 LPRA Ap. V, R. 36.

lado, el 6 de febrero de 2023, los codemandados Pagán-Ramos presentaron una *Oposición a Solicitud de Sentencia Sumaria*. En síntesis, alegaron incumplimiento con la Ley Núm. 184-2012[9] por falta de buena fe de la parte demandante y argumentaron que la sentencia sumaria no procedía por no cumplirse con los requisitos de forma.

El 16 de mayo de 2023, notificada el 26 de mayo de 2023, el Tribunal de Primera Instancia emitió una *Resolución* en la cual señaló que la solicitud de sentencia sumaria no cumplía con las formalidades de la Regla 36.3 de Procedimiento Civil[10] y le concedió a la parte demandante un término de veinte (20) días para presentar el escrito enmendado, so pena de renuncia. Simultáneamente, el foro primario dictó *Sentencia Parcial en Cuanto a Javier Juan Rosario Rivera, Nicole Marrero Otero y su Sociedad de Gananciales*, desestimando con perjuicio la causa de acción en contra de los codemandados Rosario-Marrero por tratarse de una ejecución de hipoteca bajo la modalidad *in rem*.

El 6 de julio de 2023, Caguas Coop presentó la solicitud de sentencia sumaria enmendada y el Tribunal de Primera Instancia ordenó a la parte demandada a replicar en un término de veinte (20) días. Transcurrido dicho término sin que los demandados Pagán-Ramos replicaran, el 21 de septiembre de 2023, notificada el 26 de septiembre, el Foro de Instancia dictó "*Sentencia*" declarando Ha Lugar a la demanda *in rem* y dispuso que la propiedad hipotecada sea vendida en pública subasta. Particularmente, el foro primario indicó que no existía controversia de hechos alguna en cuanto a que la parte demandada venía obligada a pagar los plazos mensuales del contrato de hipoteca y que ésta incumplió su obligación de pagar la

---

[9] Ley para Mediación Compulsoria y Preservación de tu Hogar en los Procesos de Ejecuciones de Hipotecas de una Vivienda Principal, Ley Núm. 184-2012, según enmendada, *supra*.
[10] 32 LPRA Ap. V, R. 36.3.

misma. Además, el Tribunal de Primera Instancia hizo las siguientes determinaciones de hechos:

1. La parte demandante Cooperativa de Ahorro y Crédito de Caguas es una entidad cooperativista creada al amparo de las leyes del Estado Libre Asociado de Puerto Rico, la cual se dedica a la prestación de servicios financieros.

2. Los co-demandados Javier Juan Rosario Rivera y Nicole Marrero Otero estaban casados entre sí al momento de constituir la hipoteca objeto de la presente causa de acción.

3. La Demanda en el caso de autos fue enmendada el 14 de octubre de 2016 para incluir como codemandados a Eric Martín Pagán Díaz, Virgen Milagros Ramos Ortiz y la Sociedad Legal de Gananciales compuesta por ambos como nuevos titulares de la propiedad inmueble objeto de la presente causa de acción, siendo emplazados personalmente el 22 de octubre de 2018.

4. Las partes demandadas tienen capacidad jurídica para demandar y ser demandadas, son mayores de edad, no padecen de incapacidad mental o impedimento legal y no se encuentran sirviendo en las fuerzas armadas de los Estados Unidos de América.

5. El 28 de junio de 2013, Caguas Coop les concedió a las partes co-demandadas, Javiera Juan Rosario Rivera y su esposa Nicole Marrero Otero, un préstamo hipotecario por la cantidad $302,800.00 más los intereses a razón de 6.5% anual sobre el balance adeudado.

6. Las partes co-demandadas[,] Javier Juan Rosario Rivera y su esposa Nicole Marrero Otero[,] constituyeron una hipoteca mediante la escritura número 142, otorgada en Caguas, Puerto Rico, el 28 de junio de 2013, ante la notaria Teresa Pacheco Camacho y un Pagaré por la suma y fecha anteriormente indicadas suscrito bajo afidávit número 7,255.

7. El inmueble objeto de la presente ejecución ubica en: Urbanización Ciudad Jardín, 105 Calle Anturium, Toa Alta, Puerto Rico 00963.

8. Las partes co-demandadas de epígrafe, Javier Juan Rosario Riverra, Nicole Marrero otero y la Sociedad

Legal de Gananciales compuesta por ambos, son los dueños registrales del inmueble gravado por el Contrato de Hipoteca que se pretende ejecutar. La descripción registral de la propiedad es la siguiente:

URBANA: Solar marcado con el número ciento cinco (105) de la Urbanización Ciudad Jardín (La Providencia), localizada en los barrios Piñas de Toa Alta y Pájaros de Bayamón, Puerto Rico, con una cabida superficial de QUINIENTOS PUNTO CERO CERO METROS CUADRADOS (500.00 M.C.). En lindes por el Norte, en una distancia de veinte punto cero cero (20.00) metros, con los solares número ciento uno (101) y número ciento dos (102); por el Sur, en una distancia de veinte punto cero cero (20.00) metros, con la calle "B"; por el Este, en una distancia de veinticinco punto cero cero (25.00) metros, con el lote número ciento seis (106) y por el Oeste, en una distancia de veinticinco punto cero cero (25.00) metros, con el lote número ciento ocho (108).

Enclava una casa de concreto diseñada para una familia.

Consta inscrita al folio doscientos noventa y siete vuelto (297 vto.) del tomo trescientos treinta y cinco (335) de Toa Alta, finca número dieciséis mil seiscientos cuarenta y dos (16,642), Registro de la Propiedad de Bayamón, Sección Tercera.[11]

10. Los demandados[,] Javier Juan Rosario Rivera, Nicole Marrero Otero, Eric Martín Pagán Díaz y Virgen Milagros Ramos Ortiz realizaron negocio jurídico entre sí, en el que otorgaron Escritura de Compraventa sobre la propiedad descrita en el expositivo que antecede, la cual nunca fue presentada al Registro de la Propiedad.

11. Según la Escritura Número tres (3) otorgada ante la Notari[a] Yayma López Roldán el 3 de agosto de 2010, los demandados realizaron el negocio jurídico de Compraventa. No obstante, para el año 2013, los demandados, Javier Juan Rosario Rivera y Nicole Marrero Otero, realizaron una refinanciamiento de la deuda que pesaba sobre la misma a favor de Master Mortgage, quien a su vez había cedido dicho préstamo a la parte demandante.

12. La parte demandada adeuda a la parte demandante las mensualidades vencidas desde el mes de

---

[11] Hacemos constar que el Tribunal de Primera Instancia no hizo una determinación enumerada con un nueve (9).

septiembre del 2014, y así sucesivamente todas las mensualidades vencidas cada día primero de todo subsiguiente mes.

13. La parte demandante radicó la presente causa de acción el 7 de abril de 2015.

14. La parte demandada, Javiera Juan Rosario Rivera, Nicole Marrero Otero y la Sociedad Legal de Gananciales compuesta por ambos fueron emplazados personalmente el 28 de abril de 2015.

15. La parte demandada Javier Juan Rosario Rivera, Nicole Marrero Otero y la Sociedad Legal de Gananciales compuesta por ambos, iniciaron un procedimiento de Quiebra ante la Corte de Quiebras por lo cual la parte demandante presentó una Moción Solicitando la Paralización de los Procedimientos por Quiebra, siendo dictada la Sentencia de Paralización por Quiebra el 26 de septiembre de 2016 por ese Honorable Tribunal.

16. La Demanda en el caso de autos fue enmendada el 14 de octubre de 2016 para incluir como codemandados a Eric Martin Pagán Díaz, Virgen Milagros Ramos Ortiz y la Sociedad Legal de Gananciales compuesta por ambos como nuevos titulares de la propiedad inmueble objeto de la presente causa de acción.

17. Las partes co-demandadas fueron debidamente emplazadas, según surge de la presente moción y la prueba documental que se acompaña.

18. El procedimiento instado ante la Corte de Quiebras por los demandados Javier Juan Rosario Rivera, Nicole Marrero Otero y la Sociedad Legal de Gananciales compuesta por ambos fue desestimado, por lo cual la parte demandante presentó Moción Solicitando la Reapertura de Caso el 30 de mayo de 2018. Se dictó Orden sobre Reapertura de caso el 4 de junio de 2018 y notificada el 8 de junio de 2018.

19. Los codemandados Eric Martín Pagán Díaz, Virgen Milagros Ramos Ortiz y la Sociedad Legal de Gananciales compuesta por ambos fueron emplazados personalmente el 22 de octubre de 2018.

20. Los codemandados Eric Martín Pagán Díaz, Virgen Milagros Ramos Ortiz y la Sociedad Legal de Gananciales compuesta por ambos presentaron su contestación a la demanda enmendada el 14 de febrero de 2019.

21. Los codemandados Javier Juan Rosario Rivera, Nicole Marrero Otero y la Sociedad Legal de Gananciales compuesta por ambos presentaron su contestación a la demanda enmendada el 25 de febrero de 2019.

22. El caso fue referido al Centro de Mediación de Conflictos para el proceso de mediación compulsoria en los casos de ejecución de hipoteca, sin que se lograra un acuerdo que pudiera poner fin a la controversia.

23. Así las cosas, se ordenó la continuación de los procedimientos judiciales, solicitando la parte demandante la conversión de su reclamación como una "In Rem" mediante Moción en Cumplimiento de Orden presentada el 8 de septiembre de 2022, siendo dicha solicitud declarada Ha Lugar por este Honorable Tribunal.

24. Al momento de radicar la demanda, cantidad adeudada por la parte demandada ascendía a $315,533.67, la cual acumula un interés diario de $54.35.

25. No obstante las gestiones de cobro realizadas por la parte demandante, la obligación evidenciada ha sido incumplida por la parte demandada siendo la misma líquida y exigible.

26. Aunque todos los co-demandados[12] comparecieron en diferentes etapas del procedimiento y presentaron sus correspondientes alegaciones responsivas, ninguno de ellos presentó evidencia alguna de pago.

27. La demandante ejercita su derecho de declarar la totalidad de la deuda vencida, ascendente a la suma de $315,533.67 más intereses a razón del 6.5% anual hasta su total pago y la suma adicional de $30,280.00 por concepto de costas, gastos y honorarios de abogado pactados en la obligación que evidencia la deuda.

28. La parte demandante solicitó que presente causa de acción sobre ejecución de hipoteca se convirtiera en una "In Rem", por lo cual la demanda se dirige únicamente contra la propiedad inmueble hipotecada independientemente de quién la posee,

---

[12] El Tribunal de Primera Instancia hizo aquí la siguiente nota al calce: "El 16 de mayo de 2023 se dictó Sentencia Parcial desestimando con perjuicio la demanda de EN CUANTO A JAVIER JUAN ROSARIO RIVERA, NICOLE MARRERO OTERO Y SU SOCIEDAD DE GANANCIALES".

respondiendo la propiedad misma a la parte demandante por el pago total de las sumas reclamadas en la presente demanda.

Inconforme y prescindiendo sobre la presentación de una reconsideración, el 25 de octubre de 2023, los demandados-apelantes Pagán-Ramos presentaron el recurso de apelación, acogida como auto de *certiorari*, ante nos con el siguiente señalamiento de error:

> ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DICTAR SENTENCIA SUMARIA DECLARANDO HA LUGAR LA DEMANDA IN REM; EN VIOLACIÓN Y MENOSCABO DE LA LEY 184-2012 Y DERECHOS DE LA PARTE APELANTE.

El 13 de diciembre de 2023, este Tribunal de Apelaciones le solicitó al Tribunal de Primera Instancia los autos originales del caso en calidad de préstamo. Examinado el recurso en su totalidad y con la comparecencia de ambas partes, procedemos a establecer el derecho aplicable y resolver.

## II

### A. *Certiorari*

El recurso de *certiorari* es un mecanismo procesal de carácter discrecional que le permite a un tribunal de mayor jerarquía revisar las determinaciones del tribunal recurrido.[13] La Regla 52.1 de Procedimiento Civil[14] establece los preceptos que regulan la expedición discrecional que ejerce el Tribunal de Apelaciones sobre el referido recurso para la revisión de resoluciones y órdenes interlocutorias dictadas por el Tribunal de Primera Instancia.[15] En lo pertinente, la Regla 52.1, *supra*, dispone lo siguiente:

> El recurso de certiorari para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No

---

[13] *Rivera Gómez v. Arcos Dorados Puerto Rico, Inc.*, 212 DPR ___ (2023); *McNeil Healthcare v. Mun. Las Piedras I*, 206 DPR 391, 403 (2021); *IG Builders et al. v. BBVAPR*, 185 DPR 307, 337-338 (2012).
[14] 32 LPRA Ap. V, R. 52.1.
[15] *Id.*; *Mun. de Caguas v. JRO Construction*, 201 DPR 703, 709 (2019).

obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de certiorari en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.

Cualquier otra resolución u orden interlocutoria expedida por el Tribunal de Primera Instancia podrá ser revisada en el recurso de apelación que se interponga contra la sentencia sujeto a lo dispuesto en la Regla 50 sobre los errores no perjudiciales.[16]

La discreción del tribunal revisor no debe abstraerse del resto del Derecho, y por lo tanto, es una forma de razonabilidad aplicada al discernimiento judicial para así llegar a una conclusión justiciera. [17] Así pues, la discreción judicial para expedir o no el auto de *certiorari* no ocurre en un vacío ni en ausencia de parámetros.[18] Cónsono con lo anterior, la Regla 40 del Reglamento del Tribunal de Apelaciones[19] orienta la función del tribunal intermedio para ejercer sabiamente su facultad discrecional y establece los criterios que debe considerar al determinar si procede o no expedir un auto de *certiorari.*[20] La referida regla dispone lo siguiente:

El tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:

(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

---

[16] 32 LPRA Ap. V, R. 52.1
[17] *Torres González v. Zaragosa Meléndez,* 211 DPR ___ (2023); *Mun. Caguas v. JRO Construction, supra,* 712; *IG Builders et al. v. BBVAPR, supra,* 338.
[18] *Id.*
[19] 4 LPRA Ap. XXII-B, R. 40.
[20] *Torres González v. Zaragosa Meléndez, supra; Rivera Gómez v. Arcos Dorados Puerto Rico, Inc., supra; Mun. Caguas v. JRO Construction, supra; McNeil Healthcare v. Mun. Las Piedras I, supra,* págs. 404-405; *IG Builders et al. v. BBVAPR, supra,* págs. 338-339.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Cabe precisar que el recurso de *certiorari* es un recurso extraordinario discrecional que debe ser utilizado con cautela y solamente por razones de peso.[21] Es por ello que los tribunales revisores deben limitarse a aquellos casos en que la ley no provee un remedio adecuado para corregir el error señalado.[22] Nuestro ordenamiento jurídico ha establecido que el tribunal revisor sólo intervendrá con las facultades discrecionales de los foros primarios en circunstancias extremas y en donde se demuestre que éstos: (1) actuaron con prejuicio o parcialidad; (2) incurrieron en un craso abuso de discreción, o (3) se equivocaron en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo.[23]

B. *La Sentencia, Sentencia Parcial y Resolución*

La Regla 42.1 de las Reglas de Procedimiento Civil[24] define una sentencia como "cualquier determinación del Tribunal de Primera Instancia que resuelva finalmente la cuestión litigiosa y de la cual pueda apelarse". Asimismo, el Tribunal Supremo ha establecido que "una sentencia es final o definitiva cuando resuelve el caso en sus méritos y termina el litigio entre las partes, en forma

---

[21] *Pueblo v. Díaz De León*, 176 DPR 913, 918 (2009).
[22] *Id.*
[23] *Rivera Gómez v. Arcos Dorados Puerto Rico, Inc., supra; Cruz Flores et al.,* 210 DPR 465, 497 (2022); *Rivera y otros v. Banco Popular,* 152 DPR 140, 155 (2000).
[24] 32 LPRA Ap. V, R. 42.1.

tal que no queda pendiente nada más que la ejecución de sentencia".[25]

No obstante, cuando un pleito contenga más de una reclamación o figuren en él partes múltiples, el Tribunal podrá dictar una sentencia final en cuanto a una o más de las reclamaciones o partes sin disponer de la totalidad del pleito, **siempre que concluya expresamente que no existe razón para posponer que se dicte sentencia sobre tales reclamaciones hasta la resolución total del pleito y siempre que se ordene expresamente que se registre la sentencia**.[26]

En cambio, la Regla 42.1 de las Reglas de Procedimiento Civil define la resolución como "cualquier dictamen que pone fin a un incidente dentro del proceso judicial".[27] En otras palabras, la resolución es "aquella decisión en la cual se adjudica un incidente respecto al procedimiento o a los derechos y obligaciones de algún litigante o en cuanto a algún aspecto de la reclamación o reclamaciones que se dilucidan en el proceso, bien sea antes o ya sea después de dictarse la sentencia".[28]

Ahora bien, nuestro Tribunal Supremo ha resuelto que, en cuanto a la sentencia y resolución, ninguna de las dos constituye un término genérico dentro del cual pueda entenderse comprendida la otra debido a que existe una diferencia conceptual categórica entre ellas.[29] No es la designación lo que determina si el dictamen es una resolución o una sentencia, pues, un dictamen judicial puede titularse sentencia y ser realmente una resolución y viceversa.[30] Por ello, el Tribunal Supremo ha señalado que "si un tribunal dicta una resolución, pero ésta verdaderamente pone fin a todas las

---

[25] *García v. Padró*, 165 DPR 324, 332 (2005).
[26] 32 LPRA Ap. V, R. 42.3.
[27] 32 LPRA Ap. V, R. 42.1.
[28] *García v. Padró, supra.*
[29] *Id.*, págs. 332-333.
[30] *Id.*, pág. 333.

controversias entre las partes, se constituye en una sentencia final de la cual puede interponerse recurso de apelación".[31] De igual modo, **si un Tribunal dicta una sentencia parcial que no cumple con los requisitos de la Regla 42.3 de Procedimiento Civil[32], la sentencia no será apelable por no ser final y realmente constituirá una resolución que sólo podrá ser revisada mediante recurso de *certiorari*.**[33]

## C. *Sentencia Sumaria*

La sentencia sumaria es un mecanismo procesal que tiene como propósito la solución, justa, rápida y económica de los litigios civiles que no contengan controversias genuinas de hechos materiales y que, por lo tanto, no ameritan la celebración de un juicio en su fondo.[34] La Regla 36.1 de Procedimiento Civil[35] establece que las partes podrán presentar una moción fundada en declaraciones juradas o en aquella evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes, para que el tribunal dicte sentencia sumariamente a su favor sobre la totalidad o cualquier parte de la reclamación solicitada.[36] La sentencia sumaria es una excepción al juicio mediante testimonios vivos frente al juzgador de los hechos.[37] La parte que solicita la sentencia sumaria tiene la responsabilidad de demostrar de manera clara que el promovido no puede prevalecer mediante ningún supuesto de hechos y que el tribunal cuenta con la verdad sobre todos los hechos necesarios para resolver la controversia ante su consideración.[38]

---

[31] *Id.*
[32] 32 LPRA Ap. V, R. 42.3.
[33] *García v. Padró, supra,* págs. 333-334.
[34] *Segarra Rivera v. International Shipping Agency, Inc.,* 208 DPR 964, 979 (2022).
[35] 32 LPRA Ap. V, R. 36.1.
[36] *Id.*
[37] *SLG Zapata-Rivera v. J.F. Montalvo,* 189 DPR 414, 430 (2013).
[38] *Id.,* pág. 473.

Por su parte, el Tribunal tiene discreción para conceder o no la sentencia sumaria, ya que el mal uso de esta puede despojar a un litigante de su día en corte, lo cual coartaría su debido proceso de ley.[39] Es por lo anterior, que no es aconsejable que se utilice el mecanismo de sentencia sumaria cuando hay elementos subjetivos, de intención, propósitos mentales o negligencia, o cuando el factor de credibilidad sea esencial para dilucidar la controversia que deban ser evaluados por el juzgador.[40] No obstante, el Tribunal puede utilizar el mecanismo de sentencia sumaria, aun cuando hay elementos subjetivos, si la evidencia que será considerada en la solicitud surge que no existe controversia en cuanto a los hechos materiales.[41] Ahora bien, antes de utilizar el mecanismo de sentencia sumaria, el Tribunal debe evaluar lo siguiente:

> (1) analizará los documentos que acompañan la moción solicitando la sentencia sumaria y los documentos incluidos con la moción en oposición y aquellos que obren en el expediente del tribunal; (2) determinará si el oponente controvirtió algún hecho material o si hay alegaciones de la demanda que no han sido controvertidas o refutadas en forma alguna por los documentos.[42]

En síntesis, el Tribunal de Primera Instancia no podrá dictar sentencia sumaria cuando: "(1) existan hechos materiales y esenciales controvertidos; (2) haya alegaciones afirmativas en la demanda que no ha sido refutadas; (3) surja de los propios documentos que se acompañan con la moción una controversia real sobre hecho material y esencial, o (4) como cuestión de derecho no proceda."[43]

Ahora bien, si la otra parte desea derrotar una moción de sentencia sumaria, deberá presentar declaraciones juradas y documentos que pongan en controversia los hechos presentados por

---

[39] *Roing Com. Bank v. Rosario Cirino*, 126 DPR 613, 617 (1990).
[40] *Segarra Rivera v. International Shipping Agency, Inc., supra*, pág. 980.
[41] *SLG Zapata-Rivera v. J.F. Montalvo, supra*, pág. 442-443.
[42] *Management Administration Services, Corp v. ELA*, 152 DPR 599, 611 (2000).
[43] *Fernández Martínez v. RAD-MAN San Juan III-D, LLC*, 208 DPR 310, 335 (2021)

el promovente.[44] No obstante, el solo hecho de no presentar evidencia que controvierta la presentada por el promovente, no implica necesariamente que procede la sentencia sumaria.[45] Los jueces no están constreñidos por los hechos o documentos evidenciarios que se aduzcan en la solicitud de sentencia sumaria, sino que tienen el deber de considerar todos los documentos en autos, incluso aquella que no haya formado parte de la solicitud, sin dirimir cuestiones de credibilidad.[46]

En cuanto al estándar de revisión aplicable al Tribunal de Apelaciones al momento de revisar la determinación del foro primario de conceder o denegar la sentencia sumaria, el foro intermedio apelativa solo puede:

> (1) considerar los documentos que se presentaron ante el foro primario —cual implica que, en apelación los litigantes no pueden añadir prueba que no fue presentada oportunamente ante el foro primario, ni esbozar nuevas teorías—, (2) determinar si existe o no alguna controversia genuina de hechos materiales y esenciales, y (3) determinar si el derecho se aplicó de forma correcta.[47]

Por utilizar los mismos criterios de evaluación, los foros apelativos se encuentran en la misma posición que el tribunal de instancia.[48] Ahora bien, el Tribunal Supremo estableció que el estándar a seguir para revisar la denegatoria o concesión de una moción de sentencia sumaria es el siguiente:

> (1) que el Tribunal de Apelaciones se encuentre en la misma posición del Tribunal de Primera Instancia al momento de revisar solicitudes de sentencia sumaria, y que esta revisión sea *de novo*;
>
> (2) que el Tribunal de Apelaciones revise que tanto la moción de sentencia sumaria como su oposición cumplan con los requisitos de forma codificados en las Reglas de Procedimiento Civil;
>
> (3) que el Tribunal de Apelaciones revise si en realidad existen hechos materiales en controversia y si existen debe exponer concretamente cuáles hechos materiales

---

[44] *PFZ Props, Inc v Gen, Acc Ins. Co.* 136 DPR 881, 912-913 (1994).
[45] *Id.*, pág. 913.
[46] *Vera v. Dr. Bravo*, 161 DPR 308, 333 (2004).
[47] *Segarra Rivera v. International Shipping Agency, Inc.*, *supra*, pág. 981.
[48] *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 116 (2015).

encontró que están en controversia y cuáles están incontrovertidos, y

(4) si los hechos materiales realmente son incontrovertidos, el foro apelativo intermedio procederá entonces a revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho en la controversia.[49]

### D. *Los requisitos de la hipoteca*

Según el antiguo Código Civil de Puerto Rico[50], la hipoteca, al igual que la prenda, es un derecho real de garantía que tiene como requisitos esenciales los siguientes:

1. Que se constituya para asegurar el cumplimiento de una obligación principal.

2. **Que la cosa pignorada o hipotecada pertenezca en propiedad al que la empeña o hipoteca**.

3. **Que las personas que constituyan la prenda o hipoteca tengan la libre disposición de sus bienes o en caso de no tenerla, se hallen legalmente autorizadas al efecto**.[51] (Énfasis Nuestro).

También, como requisito adicional, es de esencia que, vencida la obligación principal, puedan ser enajenadas las cosas en que consiste la prenda o hipoteca para pagar al acreedor.[52] En cuanto a la hipoteca en particular, resulta indispensable que el documento en que se constituya sea inscrito en el Registro de la Propiedad para que la hipoteca quede válidamente constituida.[53] Sin ello no nace el derecho de garantía de la hipoteca.

La derogada Ley Núm. 198 de 8 de agosto de 1979[54] establecía que una hipoteca voluntaria es aquella convenida entre partes o impuesta **por disposición del dueño del bien o derecho sobre que**

---

[49] *Segarra Rivera v. International Shipping Agency, Inc.*, *supra,* pág. 982.

[50] Código Civil de Puerto Rico, Edición de 1930, según enmendado, 31 LPRA § 1 et seq.

[51] Art. 1756 del Código Civil de Puerto Rico, Edición de 1930, según enmendado, 31 LPRA § 5001. Este artículo ha sido derogado por la Ley Núm. 55-2020, también conocido como el Código Civil de Puerto Rico de 2020, según enmendado. No obstante, debido a la fecha en la que ocurrieron los hechos, la ley aplicable al caso de autos es la previamente citada.

[52] Art. 1757 del Código Civil de Puerto Rico, Edición de 1930, según enmendado, 31 LPRA § 5002.

[53] Art. 1774 del Código Civil de Puerto Rico, Edición de 1930, según enmendado, 31 LPRA § 5042.

[54] Ley Hipotecaria y del Registro de la Propiedad, Ley Núm. 198 de 8 de agosto de 1979, según enmendada, 30 LPRA § 2001 nota et seq.

**la se constituye y únicamente podrá ser establecida por quienes tengan la libre disposición de dicho bien** o derecho o, en caso de no tenerla, se hallen autorizado para ello con arreglo a las leyes.[55] Éstas debían ser otorgadas por quienes tienen la facultad de constituir hipotecas voluntarias, sea por sí mismo o por medio de un apoderado.[56] No obstante, **la hipoteca otorgada por el que no tenga derecho para ello será nula**, aunque el otorgante adquiera después dicho derecho.[57]

III

Como único error señalado, los peticionarios arguyeron que el Tribunal de Primera Instancia incidió al dictar sentencia sumaria y no considerar y verificar el cumplimiento con la Ley Núm. 184-2012[58]. Los peticionarios esgrimieron que la parte demandante-recurrida no actuó de buena fe por no haberle dado curso a la solicitud de los apelantes sobre refinanciamiento de la deuda mediante préstamo. De la misma forma, los peticionarios alegaron que la existencia o ausencia de la buena fe en el proceso de mediación por Caguas Coop constituye un hecho material en controversia que le impedía al Tribunal de Primera Instancia dictar la sentencia sumaria. Empero, dicho planteamiento de error es académico y no formará parte de nuestra discusión. Así pues, ante un concienzudo estudio del expediente original en su totalidad y del derecho aplicable, resulta forzoso concluir que la hipoteca objeto de la demanda es nula. Veamos.

---

[55] Art. 182 de la Ley Hipotecaria y del Registro de la Propiedad, Ley Núm. 198 de 8 de agosto de 1979, según enmendada, 30 LPRA § 2601. Esta ley fue derogada por la Ley Núm. 210-2015, conocida como la Ley del Registro de la Propiedad Inmobiliaria del Estado Libre Asociado de Puerto Rico. Sin embargo, hacemos referencia a la precitada ley debido a que la hipoteca se otorgó en el año 2013, durante la vigencia de la ley derogada, haciendo ésta la ley aplicable al caso ante nos.

[56] Art. 183 de la Ley Hipotecaria y del Registro de la Propiedad, Ley Núm. 198 de 8 de agosto de 1979, según enmendada, 30 LPRA § 2602.

[57] *Id.*

[58] Ley para Mediación Compulsoria y Preservación de tu Hogar en los Procesos de Ejecuciones de Hipotecas de una Vivienda Principal, Ley Núm. 184-2012, según enmendada, 32 LPRA § 2881 et seq.

Revisitemos brevemente los hechos constitutivos del caso de epígrafe. Según la escritura de compraventa del inmueble objeto de la acción civil, el 3 de agosto de 2010, el matrimonio Rosario-Marrero vendió el bien inmueble a los peticionarios Pagán-Ramos. El inmueble estaba hipotecado a favor de Master Mortgage Corporation. Como parte de las estipulaciones, los peticionarios se obligaron a continuar pagando la hipoteca que gravaba el inmueble con pagos mensuales y a gestionar el traspaso de dicha hipoteca a su nombre en el término de dieciocho (18) meses.[59] Sin embargo, la escritura de compraventa no fue inscrita posteriormente en el Registro de la Propiedad, por lo cual los titulares registrales eran Javier Rosario Rivera, Nicole Marrero Otero y la Sociedad Legal de Gananciales compuesta por ambos. En otras palabras, existía una inexactitud en el Registro de la Propiedad, pues, los titulares eran, y continúan siendo, los peticionarios, Eric Pagán Díaz y Virgen Ramos Ortiz.

Así las cosas, el 28 de junio de 2013, el matrimonio Rosario-Marrero otorgó un préstamo hipotecario con Caguas Coop sobre el mismo inmueble que le vendieron hacían tres (3) años a los peticionarios con el propósito de refinanciar la hipoteca a favor de Master Mortgage Corporation. Según los escritos de las partes, el matrimonio Rosario-Marrero le ocultó a Caguas Coop la compraventa del inmueble e inexactitud del Registro de la Propiedad al otorgar el nuevo préstamo hipotecario con Caguas Coop. Incluso, anotamos que la Corte de Quiebras determinó expresamente que la deuda reclamada en la *Demanda Enmendada* no era descargable

---

[59] El 12 de abril de 2022, los demandados, Javier Rosario Rivera y Nicole Marrero Otero, presentaron una *Moción sobre Demanda Contra Co-Partes* en la cual solicitaron la autorización del Tribunal de Primera Instancia para demandar a Eric Pagán Díaz y Virgen Ramos Ortiz por incumplimiento de contrato al no haber hecho los pagos mensuales pactados y nunca gestionar el traspaso de la hipoteca. No obstante, el Foro de Instancia declaró No Ha Lugar a la moción por entender que éste era un caso de naturaleza *in rem*. Véase *Orden* del 13 de septiembre de 2022, notificada al día siguiente.

debido a que concluyó que la hipoteca que aseguraba la misma se constituyó fraudulentamente.

**Considerando los hechos antes esbozados, es evidente que el matrimonio Rosario-Marrero no tenía la libre disposición para enajenar el bien inmueble objeto del préstamo hipotecario ni eran los dueños del inmueble, pues, había vendido ésta a los peticionarios tres (3) años previo a la otorgación del contrato hipotecario. De los escritos ni del expediente original ante nos surge tampoco que el matrimonio Rosario-Marrero estuviese legalmente autorizado para ello.** El Artículo 1756 del Código Civil de 1930[60], ley aplicable al otorgarse la hipoteca, claramente establecía que la libre disposición del bien o la debida autorización legal al efecto, así como la titularidad del inmueble hipotecado eran requisitos esenciales para que se constituya válidamente el derecho real de garantía que es la hipoteca. Más aún, el Artículo 183 de Ley Núm. 198 de 8 de agosto de 1979[61], también aplicable al otorgarse la hipoteca, establecía que la hipoteca otorgada por aquel que no tenga derecho para ello será nula, aunque el otorgante adquiera el derecho posteriormente.

Evidentemente, el préstamo hipotecario otorgado entre Caguas Coop y el matrimonio Rosario-Marrero no cumple con los requisitos esenciales establecidos por ley y, en su consecuencia, es nula, primordialmente debido a que el matrimonio Rosario-Marrero no tenía la libre disposición o derecho legítimo para haber otorgado la hipoteca y porque no ostentaban la titularidad sobre el bien para otorgarla. Resolver al contrario permitiría la premiación y convalidación de hipotecas cometidas mediante fraude, omisión o

---

[60] Art. 1756 del Código Civil de Puerto Rico, Edición de 1930, según enmendado, *supra.*
[61] Art. 183 de la Ley Hipotecaria y del Registro de la Propiedad, Ley Núm. 198 de 8 de agosto de 1979, según enmendada, *supra.*

por personas sin derecho para ello, cuyo efecto intentó evitar el legislador mediante las referidas legislaciones.

Por último, aclaramos que la "*Sentencia*" dictada por el Tribunal de Primera Instancia realmente constituye una resolución. Nos explicamos. Los codemandados Pagán-Ramos presentaron una solicitud de desestimación y una reconvención el 14 de diciembre de 2018 mediante *Escrito en Cumplimiento*. Aunque el Tribunal de Primera Instancia declaró No Ha Lugar a la solicitud de desestimación, nada dispuso sobre la reconvención, quedando esta pendiente de adjudicación. La "*Sentencia*" recurrida no hace ninguna de las expresiones requeridas por la Regla 42.3 de Procedimiento Civil[62], por lo que no puede considerarse tampoco como una sentencia parcial que dispuso de forma final las controversias acumuladas en la *Demanda Enmendada*. **En vista de lo anterior, quedan aún pendientes de adjudicación final las controversias esgrimidas en la *Demanda Enmendada* y en la reconvención. Ello es así, puesto que hemos concluido expresamente que el foro de instancia erró al conceder la solicitud de sentencia sumaria interpuesta por Caguas Coop ya que la hipoteca que garantizaba la deuda original es nula, por no haberla constituido los dueños del inmueble o quienes tenían la libre disposición para subscribir dicho negocio jurídico.**

A base de lo anterior, el Tribunal de Primera Instancia deberá evaluar y tomar las previsiones que entienda pertinentes.

IV

Por los fundamentos antes expresados, las cuales hacemos formar parte de este dictamen, se expide el auto de *certiorari* y se revoca la "*Sentencia*" recurrida dictada por el Tribunal de Primera Instancia, Sala Superior de Bayamón. En su consecuencia, se

---

[62] 32 LPRA Ap. V, R. 42.3.

deniega la moción de sentencia sumaria. Se devuelve al Tribunal de

Primera Instancia para la continuación de los procedimientos.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del

Tribunal de Apelaciones.

Lcda.  Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones